IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 4:17-CR-65-FL-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | |
| JUAN SEGURA-GOMEZ, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to suppress evidence (DE 19), following defendant's arrest for illegal reentry in to the United States. United States Magistrate Judge James E. Gates (the "magistrate judge") entered memorandum and recommendation ("M&R"), wherein he recommends denying defendant's motion to suppress. Defendant filed objections to the M&R. The government noticed that it did not have any objections. In this posture, the issues raised are ripe for ruling. For the following reasons, the court adopts the M&R and denies defendant's motion to suppress.

## STATEMENT OF THE CASE

On December 7, 2017, defendant was charged by criminal complaint with one count of illegal reentry of a deported or removed alien, in violation of 8 U.S.C. § 1326(a). On December 20, 2017, he was indicted for the same offense.

On January 26, 2018, defendant filed the instant motion. He seeks suppression of "all identity evidence, fingerprint evidence, all post-seizure statements, and all evidence of prior immigration encounters or deportations contained in [defendant's alien file] linked to the fingerprints obtained following his arrest on December 6, 2017." (DE 19).

On March 28, 2018, the magistrate judge held a hearing on defendant's motion. The government presented testimony of Special Agent Charles Kitchen ("Kitchen") and Special Agent Thomas Swivel ("Swivel") from the Department of Homeland Security. (Transcript of Hearing ("Tr.") 9:13–74:7). The court also admitted five government exhibits, without objection by defendant, including 1) a Notice to Appear (Form I-862) issued to defendant and dated November 24, 2009 (Ex. G1); 2) a Warrant for Arrest of Alien (Form I-200) dated November 24, 2009 (Ex. G2); 3) an immigration judge's order that defendant be removed from the United States dated November 30, 2009 (Ex. G3); 4) a Warrant of Removal/Deportation (Form I-205) signed by the Field Office Director on November 30, 2009 and served on defendant on December 4, 2009 (Ex. G4); and 5) a second Warrant of Removal/Deportation (Form I-205) signed by the Field Office Director on August 10, 2010 and served on defendant on August 24, 2010 (Ex. G5). (See Tr. 17:5–18:9).

Defendant presented no testimony, but the court admitted six exhibits offered by him, without objection by the government, including 1) 8 C.F.R. § 287.8 (Ex. D1); 2) government's response brief to defendant's motion to dismiss in United States v. Torres-Rodriguez, No. 1:15-CR-342-WSD-JFK (D.E. 15) (N.D. Ga. Dec. 8, 2015) (Ex. D2); 3) Arizona v. United States, 567 U.S. 387 (2012) (Ex. D3); 4) Moreno v. Napolitano, 213 F. Supp. 3d 999 (N.D Ill. 2016) (Ex. D4); 5) 8 C.F.R. § 287.5 (Ex. D5); and 6) government's response brief in United States v. Oscar-Torres, No. 06-5074 (D.E. 28) (4th Cir. 8 Mar. 2007) . (See Tr. 58:24–60:21; 106:25–107:15).

Upon reviewing the evidence, the magistrate judge concluded that defendant's arrest violated 8 U.S.C. § 1357(a),[1] because the government failed to establish defendant was a flight risk, and thus

---

[1] Section 1357(a) enumerates several different circumstances under which an immigration official may arrest an alien in the United States, including "if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation [providing for the admission, exclusion, expulsion, or removal of aliens] and is

the immigration officers in this case did not have statutory authority to arrest him without a warrant. However, the magistrate judge also concluded suppression of the evidence was inappropriate because defendant's Fourth Amendment rights were not violated, and 8 U.S.C. § 1357 does not provide for a suppression remedy. Neither defendant nor the government objects to the finding that the government violated 8 U.S.C. § 1357 by arresting him without a warrant. However, defendant objects to the findings that his Fourth Amendment rights were not violated, and that suppression not an available remedy under 8 U.S.C. § 1357. The government does not object to any of the findings contained in the M&R.

## STATEMENT OF THE FACTS

Upon de novo review of the record, the court adopts the factual findings of the M&R as summarized herein. On November 15, 2017, Special Agent Kitchen received and email from his supervisor that a tip was received indicating defendant was in the country illegally for the third time, having previously been deported twice. (Tr. 11:6–9, 19:12–19). The tip contained information that defendant worked at a mobile home business in Washington, North Carolina ("Washington") and that he would be attending Beaufort County District court on December 6, 2017. (Tr. 11:9–12, 19:20–22). Special Agent Kitchen was aware the hearing concerned a custody dispute over defendant's son. (Tr. 19:23–25).

The person who provided the tip gave her name and indicated she was the mother of the child who was the subject of the custody hearing. (Tr. 20:8–10, 20:24–21:3). Special Agent Kitchen spoke with her twice by telephone, once within a week after the tip was received, and she gave him the name of defendant's workplace. (Tr. 20:11–23, 21:10–17). After receiving the tip, Special

---

likely to escape before a warrant can be obtained for his arrest . . . ."

Agent Kitchen ordered defendant's alien file and did some surveillance in the Washington area. (Tr. 11:21–22). The alien file contained information on defendant's prior deportations, a photograph of defendant, and a photograph of his fingerprint. (Tr. 12:6–12). The photographs were taken in the context of an administrative proceeding in connection with defendant's prior deportations. (Tr. 12:13–18).

Between November 15, 2017 and December 6, 2017, Kitchen traveled to Washington to perform surveillance at defendant's workplace, but did not make contact with defendant. (Tr. 12:22–13:4; 13:8–11). On December 6, 2017, Special Agent Kitchen and another agent, Special Agent Davies, returned to Washington around 8:30 a.m. to 8:45 a.m. to see if they could encounter defendant. (Tr. 11:22–24, 13:24–14:4; 25:25–26:1). The agents watched the courthouse to see if defendant would enter, but never saw him. (Tr. 14:4–8). Special Agent Kitchen then texted the woman who provided the tip, and the woman indicated she was not at the courthouse yet, but later texted Special Agent Kitchen a description of defendant's clothing. (Tr. 14:4–18, 31:13–16).

Kitchen and Davies witnessed defendant leave the courthouse around lunchtime and walk down the street with a female. (Tr. 14:11-13, 24:22-25). They were able to identify defendant from the description of defendant's clothing in combination with the information and photograph contained in defendant's alien file. (Tr. 16:11-16, 32:3-20). Also, based on the photograph in the alien file, Kitchen believed he had probable cause to believe the individual in the alien file and defendant were the same person. (Tr. 33:9-12).

As defendant and the female were walking back to the courthouse from lunch, Special Agents Kitchen and Davies approached them and identified themselves. (Tr. 14:19–23). Special Agent Kitchen believes that Special Agent Davies called defendant by his first name and defendant responded. (Tr. 14:23, 25:20–26:7). They asked if he had any identification, and defendant

produced a Florida identification card with his name on it. (Tr. 14:23–25). Special Agent Kitchen specifically asked defendant if he was Juan Segura-Gomez, and defendant responded that he was. (Tr. 14:25–15:1). Special Agent Kitchen then arrested defendant, intending it as an administrative arrest for defendant's being in the country illegally. (Tr. 15:1–3, 36:15–37:4).

After Special Agents Kitchen and Davies drove defendant to the Wilmington office, they took his fingerprints, which were a match for Juan Segura-Gomez as found in the alien file. (Tr. 15:5–8). At that point, Special Agent Kitchen decided to present the case for criminal prosecution. (Tr. 27:22–28:1). This had been Kitchen's plan during the investigation and apprehension of defendant since he was aware that defendant had been deported in the past and that the case would be accepted for criminal prosecution if the fingerprints came back as a match to those in the alien file. (Tr. 28:2–13).

Once defendant's criminal case concludes, immigration authorities will take defendant into custody for deportation. (Tr. 55:24–56:6). Such a deportation would result from a reinstatement of a 2009 deportation order entered against defendant. (Tr. 56:7–12).

**COURT'S DISCUSSION**

A.     Standard of Review

The district court reviews de novo those portions of the M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon

careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.     Analysis

Defendant does not object to the portions of the M&R holding that the government violated 8 U.S.C. § 1357 by arresting him without a warrant. However, defendant objects to the magistrate judge's finding that suppression is not an appropriate remedy in this case. Specifically, defendant argues that Supreme Court precedent does not require a constitutional violation accompany a statutory violation for the exclusionary rule to apply. Defendant also argues that an unlawful arrest without a warrant implicates important constitutional interests. Finally defendant asserts that United States v. Oscar Torres supports suppression of the evidence obtaining following defendant's arrest.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. AMEND. IV. To be reasonable, a search or seizure must be supported by probable cause. See Brinegar v. United States, 338 U.S. 160, 174–76 (1949) ("Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."). Probable cause is based on the "totality-of-the-circumstances" and is evaluated based on "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 230–31 (1983).

Generally, a search without a warrant implicates Fourth Amendment interests because "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). "A warrantless

arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." Maryland v. Pringle, 540 U.S. 366, 370 (2003).

"There is no exclusionary rule generally applicable to statutory violations." United States v. Clenney, 631 F.3d 658, 667 (4th Cir. 2011) (citing United States v. Abdi, 463 F.3d 547, 556 (6th Cir.2006)); see United States v. Oriakhi, 57 F.3d 1290, 1295 n. 1 (4th Cir.1995). "The availability of the suppression remedy for . . . statutory, as opposed to constitutional, violations . . . turns on the provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights." Clenney, 631 F.3d at 667 (quoting United States v. Donovan, 429 U.S. 413, 432 n. 22 (1977)). "[T]he exclusionary rule is an appropriate sanction for a statutory violation only where the statute specifically provides for suppression as a remedy or the statutory violation implicates underlying constitutional rights such as the right to be free from unreasonable search and seizure." Abdi, 463 F.3d at 556 (citing Sanchez-Llamas v. Oregon, 548 U.S. 331, 348–49 (2006))

Here, there is no violation of the Fourth Amendment. Special Agent Kitchen had received a tip that defendant was in the country illegally and that he would be attending family court in Washington on December 6, 2017. Additionally, Special Agent Kitchen received a description of what defendant was wearing that day. Having also reviewed the alien file which contained a photograph of defendant, Special Agent Kitchen was able to identify defendant when he left the courthouse, as well as when he left the restaurant. The alien file also informed Special Agent Kitchen that defendant had been removed on two prior occasions, corroborating that his presence in the United States would be in violation of 8 U.S.C. § 1326(a). Therefore, the court concludes on de novo review of the M&R that the Special Agents had probable cause to arrest defendant.

Furthermore, a warrant was not required under the Fourth Amendment to arrest defendant in this case. See Virginia v. Moore, 553 U.S. 164, 178 (2008) (holding violation of a state statute requiring citation for certain offenses instead of arrest did not also violate the Fourth Amendment). The Supreme Court has held that "[a] warrantless arrest of an individual in a public place for a felony . . . is consistent with the Fourth Amendment if the arrest is supported by probable cause." Pringle, 540 U.S. at 370. As discussed above, the Special Agents had probable cause in this case. The crime for which defendant was arrested, illegal reentry into the United States after being deported or removed, is a felony. See 8 U.S.C. § 1326(a). The Special Agents arrested defendant on his walk back to the courthouse, or in a public place. Therefore, the arrest did not a require a warrant and was reasonable under the Fourth Amendment.

Having established that no Fourth Amendment violation occured, the court considers whether a violation of the procedural statute in question, 8 U.S.C. § 1357(a), standing alone, provides for suppression of the evidence.

The Fourth Circuit has addressed previously the issue whether a violation of a federal statute by an arresting officer can trigger suppression of evidence under the exclusionary rule. In United States v. Clenney, the Fourth Circuit considered whether an agent violating Electronic Communications Privacy Act ("ECPA") by failing to obtain a warrant for phone records required suppression of evidence obtained from those phone records. 631 F.3d at 666–67. The court held suppression was not an available remedy under the statute, concluding that the ECPA does not authorize suppression of phone records obtained without a warrant. Id. at 666 (Congress has shown that it knows how to create a statutory suppression remedy . . . [y]et it chose not to do so [here.]").

The Fourth Circuit has not, however, addressed the issue whether a violation of § 1357(a) can support exclusion of evidence. As noted above, § 1357(a) provides that immigration officers

and employees are empowered to conduct arrests without a warrant under limited circumstances. See 8 U.S.C. § 1357(a). The statute does not expressly provide for any suppression of evidence obtained when an officer exceeds the scope of his statutory authority when making an arrest without a warrant. See id. Therefore, under the reasoning of Clenney, there is no statutorily authorized suppression remedy.

In any event, the statute does not implicate defendant's Fourth Amendment interest in being free from unreasonable searches and seizures. As discussed above, defendant was arrested based on probable cause, and it is constitutionally reasonable that Special Agent Kitchen arrested him in public without a warrant, even though in violation of 8 U.S.C. § 1357. See Moore, 553 U.S. at 178 ("[The Fourth] Amendment does not require the exclusion of evidence obtained from a constitutionally permissible arrest."); Clenney, 631 F.3d at 667 (finding no suppression for violation of 18 U.S.C. § 2703(c)). Put another way, there is no Fourth Amendment interest implicated by being arrested without a warrant by an immigration official as opposed to another government agent deputized with the power of arrest and not subject to the flight risk requirements of 8 U.S.C. § 1357. See, e.g., 18 U.S.C. § 3052 (". . . agents of the Federal Bureau of Investigation of the Department of Justice may . . . make arrests without warrant . . . for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony."). Consequently, the absence of a statutory provision authorizing exclusion of evidence for violations of 8 U.S.C. § 1357 is fatal to defendant's motion to suppress.

Defendant argues that Sanchez-Llamas supports his position that suppression is warranted in this case. Defendant misinterprets the holding of the case. In Sanchez-Llamas, the Supreme Court held that neither the Vienna Convention nor federal precedents applying the exclusionary rule supported suppression of petitioner's statements to the police. 548 U.S. at 350. This holding

directly contradicts defendant's argument that the exclusionary rule should be extended in this case. Id. at 347 ("[T]he exclusionary rule is not a remedy we apply lightly.").

Defendant also argues that Miller v. United States, 357 U.S. 301 (1958), supports his argument that 8 U.S.C. § 1326 requires exclusion of the evidence obtained from his arrest. In Miller, the Supreme Court held that violating a judicially crafted knock and announce rule for arrests merits suppression of the evidence. Id. at 302–04. However, Miller is inapposite for this case for several reasons. First, the rule was judicially crafted and not one developed by statute, making it distinguishable from this case. See id. The statutory analog for searches was only mentioned in passing in the case. Id. at 306. Second, the knock and announce rules mentioned in Miller that are codified by statute are also mandated by the Fourth Amendment. Hudson v. Michigan, 547 U.S. 586, 589 (2006) (citing Wilson v. Arkansas, 514 U.S. 927, 931–32 (1995)). Since the Court has held that violation of the knock and announce rules are both a statutory violation and a Fourth Amendment violation, Miller is distinguishable from the present case.[2]

Similarly, in McNabb v. United States, 318 U.S. 332 (1943), the Court held that statements made during a prolonged detention without presentation to a judicial officer violated presentment statutes. Id. at 342–45. The Court subsequently stated that "the statutory right was intended to "avoid all the evil implications of secret interrogation of persons accused of crime." Sanchez-Llamas, 548 U.S. at 348 (discussing how the statute at issue in McNabb addressed the issues underlying Miranda v. Arizona). Defendant's case is distinguishable because he does not allege any violation of his Fifth Amendment rights. Additionally, as discussed above, defendant's right to be free from unreasonable search and seizure under the Fourth Amendment is not implicated

---

[2]In any event, the Court went on to hold that the exclusionary rule was not applicable for knock and announce violations. Hudson v. Michigan, 547 U.S. 586, 589 (2006).

here, because the arrest carried out by the Special Agents was constitutionally reasonable. See Moore, 553 U.S. at 178; Clenney, 631 F.3d at 667.

Finally, Oscar-Torres is inapplicable in this case because it holds suppression of identity evidence in criminal proceedings is appropriate in certain circumstances for unlawful arrests under the Fourth Amendment. See United States v. Oscar-Torres, 507 F.3d 224, 227 (4th Cir. 2007) ("Indisputably, suppression of evidence obtained during illegal police conduct provides the usual remedy for Fourth Amendment violations."). In this case, no Fourth Amendment violation occurred. Moreover, as defendant correctly notes in his objections, Oscar-Torres does not address the issue of whether suppression of evidence is appropriate based on statutory violations where no constitutional violation has occurred. Therefore, defendant's reliance on Oscar-Torres is misplaced.

Defendant asserts a number of other constitutional interests he alleges are implicated by violation of 8 U.S.C. § 1357 in this case, including 1) the executive branch's disregard of a congressional mandate, 2) fundamental issues of judicial integrity, and 3) defendant's constitutional rights as a parent. Defendant does not cite any case law to support his argument that evidence in his case should be suppressed on the basis of these constitutional interests. Indeed, the Supreme Court indicates that the only constitutional interests implicated by violation of a statute that have resulted in suppression are those under the Fourth and Fifth Amendments. See Sanchez-Llamas, 548 U.S. at 347–50. Therefore, the court finds these arguments without merit with regard to justifying exclusion under 8 U.S.C. § 1357.

## CONCLUSION

Based on the foregoing, the court ADOPTS the memorandum and recommendation (DE 35). Defendant's motion to suppress (DE 19) is DENIED. Pursuant to the court's order dated January 29, 2018, it is ORDERED that defendant's arraignment be scheduled to occur no sooner than 45

11

days after the date of this order.

SO ORDERED, this the 30th day of November, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge